PERRY, next friend, *v.* MACON CONSOLIDATED STREET RAILROAD COMPANY.

1. In an action against a street-railroad company by a minor, to recover damages for personal injuries sustained by being run over by a moving car, when it appeared by the evidence for the plaintiff that there was a pile of lumber in the street on one side of and near the railroad-track, not placed there by the defendant, behind which the plaintiff and other boys were playing, and as the car approached the end of such pile of lumber the plaintiff suddenly ran on the track immediately in front of or against the front part of the moving car and was struck and injured; and when it further appeared by the same evidence that the line of track in the approach to and at the place where the accident occurred was open to the view of the motorman and free from obstruction, that the car was not being run at a reckless and unusual rate of speed, that the plaintiff could not have been seen from the car until he came on or within thirty inches of the track, that as soon as plaintiff came on or near the track the brakes were applied and every effort made to stop the car, it was not error to grant a nonsuit.

2. It affirmatively appearing that the motorman could not have seen the plaintiff in the street before he appeared on or near the track nor knew he was there, and there being no proof that such place was used by children in playing, or that there was anything to put the motorman on notice that persons were accustomed to be behind the pile of lumber, or that on this particular occasion children were in fact playing about and

behind the same, his failure to sound the gong on approaching such pile of lumber was not negligent relatively to one who ran out suddenly in front of a moving car or against it, so as to authorize the latter to recover for injuries so sustained, when no- negligence on the part of the motorman is shown in his efforts to stop the car and prevent the injuries when the person first cáme on or near the track, but on the contrary it affirmatively appearing that the brakes were promptly applied and the car stopped as soon as possible. This is true even though the person injured be a minor of tender years.

ATKINSON, J., dissenting. Where the tracks of a street-railway company are laid longitudinally in a public street of a city, and obstructions are placed in such street in such a position as to be alongside of and in such immediate proximity to its track as that a car, being run along such track, is obscured from the vision of one approaching from the direction of such obstruction, and as that a person so approaching is not visible to the persons operating such car until he is almost in immediate collision with it ; and it appears that, notwithstanding the location of such obstruction, one of the cars of the company running at a high though not unusual rate of speed, the persons operating the same giving no warning of its approach, collided with a person suddenly stepping from behind such obstruction upon the track, and injured him, the question whether the agents of the company and the person injured, in view of the relative situations of track and obstruction, were each or either of them in the exercise of all ordinary and reasonable diligence, was one of fact, and should have been submitted to the jury; and the grant of a nonsuit in an action instituted by the person injured against the street-railway company for injuries sustained in consequence of a collision occurring under such circumstances was error; and particularly is this true where it appears that the person injured was an infant of such tender years as to render doubtful the question whether it could be held to any degree of diligence in the matter of taking precautions for its own safety.

Argued March 3, — Decided July 28, 1897.

Action for damages.    Before Judge Felton.    Bibb superior court.    April term, 1896.

*Dessau & Hodges*, for plaintiff.

*Bacon, Miller & Brunson*, for defendant.

, LITTLE, J.    The pleadings and facts, so far as material to the questions made in the present case, are as follows.

M. M. Perry, as next friend of Emmett Perry, filed his petition in the superior court of Bibb county, alleging, in substance, that the Macon Consolidated Street Railroad Company, owning and operating a line of street and suburban street railroad in the city of Macon and county of Bibb, had injured and damaged petitioner in the sum of $15,000, for that, on or about the first day of April, 1893, said Emmett Perry, who is the minor

son of petitioner, and about the age of six years, was injured and damaged by said railroad company in the following manner; that on said day above mentioned, said Emmett Perry was playing with four of his companions of about the same age upon the sidewalk upon Fourth street in the city of Macon, near the store of N. B. Johnson; that there was situated near said sidewalk a pile of lumber about fourteen feet high and 40 feet long; that this lumber was placed about 3½ feet from the sidewalk on Fourth street, and about 14 inches from the railroad-track owned by said railroad company; that said children were playing upon the sidewalk at a point about 75 yards from the residence of said Emmett Perry, and while thus engaged in play, said Emmett Perry started to cross said Fourth street, leaving the sidewalk at a point just above said pile of lumber, and at the same time there came along said railroad-track an electric car operated by the defendant; that said Emmett Perry could not see the car by reason of said pile of lumber; that said car was running at a rapid rate of speed, coming out of Fourth street at the rate of 14 miles an hour; that said Emmett Perry attempted to cross the track, the car struck him on the back of the head, about nine feet below the pile of lumber, knocked him down, the wheels of the car passing over his left arm, grinding and lacerating the same; that said car was running at such a rate of speed that the motorman in charge of the same could not stop the car until it had passed over said Emmett Perry a distance of 16 or 18 feet; that said defendant, its agents, servants, etc., were negligent in not seeing said child as he attempted to cross the track, and were further negligent in that said car was running at a rate of speed within the limits of the city of Macon that was unlawful and illegal by the ordinances of the city; that said car was not under proper control, and that if the same had been running at a proper rate of speed, the motorman could have stopped the car within a distance of 9 or 10 feet and the same would not have struck said Emmett Perry; that defendant, its agents, servants, etc., were further negligent in that they did not see and did not keep a lookout for foot-passengers upon said street and public highway. The petition contains further allega-

tions, to the effect that the injury was caused by the negligence of the defendant; that said Emmett Perry was without fault or negligence in the premises; and concludes with a description of the nature and extent of the injuries inflicted. In answer to the petition, the defendant filed a plea of the general issue.

Subsequently the plaintiff amended his original petition, and by way of amendment alleged, in substance, as follows: that defendant was further negligent, in that it ran said car along its track with said pile of lumber lying longitudinally along its track for a distance of 30 feet and within 30 inches of said track, and thereby said obstruction so hid said car from the view of pedestrians, and so hid pedestrians from the view of those in charge of said car and from the motorman and conductor of said car, that the persons in charge of said car, in running the same along the track when the accident occurred, could not run the same safely and with all ordinary care and diligence towards the public and towards petitioner and his infant child without ringing the bell of said car, and running the same at a slow rate of speed, and much slower than 8 or 9 miles an hour; that at the time and place of said accident defendant was negligent in running said car at the rate of speed at which it was run along the line of said pile of lumber, and in not ringing the bell while running at the place of said accident and in approaching said place, and in not running slowly at said time and place so as to take all necessary and reasonable precaution against injury to your petitioner and his child and the public at said place, and in not exercising all ordinary and reasonable care and diligence in preventing said accident, and in permitting said obstructions to remain within 30 inches of its track a distance of 40 feet, for three weeks, whereby the track and the approach of the same were so obstructed that said defendant could not see pedestrians approaching said track, and they in turn could not see the car; that petitioner's child did not see the car, on account of the obstruction, in time to avoid the accident; and that defendant could, in the exercise of ordinary care and diligence, have seen petitioner's child in time to have stopped the car and alarmed him from the track by ringing the bell.

The cause coming on to be heard, the plaintiff introduced a number of witnesses in support of the allegations of his petition; the substance of which, except that which is descriptive of the nature and extent of the injuries and the suffering and effects produced thereby, which is not material, is as follows: The defendant owned and operated a line of track lying longitudinally in the centre of Fourth street, in Macon, Ga., said street running north and south. Fourth street, including sidewalks, is from 45 to 50 feet wide, and at a point intermediate of its intersection with Elm and Boundary streets, which latter streets run parallel to each other and at right angles with Fourth street, a pile of lumber, belonging to and to be used by an abutting lot owner in erecting a building, was also lying longitudinally in the street, estimated to be 30 or 40 feet in length and from five to fourteen feet in height; most of the witnesses fixing its height at five, and the father of the minor, who is the plaintiff, fixing its height at fourteen feet. This pile of lumber was lying longitudinally with and just east of the railroad-track. On the north end it lay about five feet from the track, and on the south end about 20 to 30 inches from the track. A portion of the lumber consisted of a pile of rafters framed together, on account of which, according to one of the witnesses, "there was a little vacant space; kind of stall-like; some of the lumber projecting over." At the point where the lumber was lying the street was straight and practically level. On Sunday afternoon, on or about March, 1893, this pile of lumber having then remained in the street something like two weeks, a number of persons were sitting on the porch of a dwelling-house situated on the west side of Fourth street, almost opposite but angling a little to the southwest of the pile of lumber. Their attention was suddenly attracted to the point where this lumber was lying, by the turning or the throwing of brakes on the wheels of a car going southward and just opposite the southern end of the pile of lumber, as well as by the immediate cries of the child. The car was stopped within a distance of 25 or 30 feet, and the plaintiff's child picked up from the eastern side of the track, with serious injuries inflicted. All

of the witnesses concur in the statement that they heard no
gong sounded on this occasion.　None of the witnesses had
seen or had their attention attracted by the presence of chil-
dren around and about this pile of lumber prior to the acci-
dent, except one witness, who testified that the first thing that
attracted her attention was the children playing behind the
pile of lumber; that she then saw the car, which was coming
by the lumber; that when she saw the car she did not then
see the children, but knew they were behind the lumber.
One witness who was sitting on the porch, which was elevated
above the street, testified that "a man five feet seven inches
high, I could see to his middle if he had not been close up to
the pile of lumber"; while the plaintiff testified: "I think
the lumber was 12 or 14 feet high; if a man was standing on
the sidewalk, a man sitting on Snipe's porch [the porch on
which the witnesses who saw the accident were sitting] could
see him, for Snipe's house is elevated.　The lumber was be-
tween ten and fourteen feet high; I measured it.　A five-foot
man standing on the sidewalk might see the top of the car
where it runs on the wire."　Up to the time of the accident
the children playing about the pile of lumber had made no
noise, nor whooped and cried out, so as to attract the attention
of the witnesses who saw the accident; and none of the wit-
nesses saw the injured child until he had been struck by the
car, except one, who testified: "It was a short time after I
saw the little boy when he was at the end of the pile of lum-
ber, and the next time I saw the boy he was lying on the
track.　If the motorman had been standing on the front end
of the car as it was moving, and had been looking straight
ahead, I think he could have seen the little boy, but at that
time he did not have time to stop the car I know, because he
was too near on the child.　I could not say the car was going
at a fast rate of speed.　He could not stop the car; I don't
suppose he could stop the car, or he would have done it.　. .
Don't know how far the boy was in front of the car when I
first saw him; just got a glimpse of the child and the car
passed.　. .　I saw him at the edge of the lumber, and the car
passed so quick that I did not see him any more.　It looked

like it was as quick as it could be done. . . I saw him practically for an instant, and then the accident occurred. . . He was running when I saw him, but it was so quick I could not tell hardly how quick it was. . . Guess he started across the track; don't know whether he started across the track or by the side of the lumber. . . He came in the direction of the track, and as he made that start towards the track he disappeared from my view and the collision occurred." Another witness testified: "If a boy had been playing on the north end of the pile of lumber, and run around from the corner, he would have been in thirty inches of the track, and two steps would have put him on the track or against the car." When the boy was picked up, he was lying on the same side of the track as the pile of lumber was situated, just above and about seven feet from the end of the lumber, and there was blood on the track between the end of the pile of lumber and the point where the boy was picked up, extending back about three feet from where the boy was lying. Some of the witnesses testified that the car was not running at an unusual rate of speed; some that it seemed to be running at schedule rate; some that it was running about the usual speed, eight or nine miles an hour; and some that it was running pretty fast. The evidence shows that the brakes were promptly applied, one witness, who was attracted by the noise of the brakes, testifying: "It was a mighty short time after I looked up before the car stopped. I suppose it ran twenty-five or thirty feet. I suppose the motorman stopped the car as soon as he could. . . The motorman stopped the car as soon as the brake would hold it, as far as I could see." Another testified: "The motorman was applying the brake, according to the noise that I heard; that was the first thing I heard. . . I can not say whether the motorman was trying to stop the car or not when I first saw it, but from the noise of the brakes on the wheels, I think he was trying to stop; from what I heard I say he was trying to stop it." It was shown that the child injured was between six and seven years of age.

The judgment of the court below granting a nonsuit in this case is sustained, not upon the theory that the person injured

was guilty of such negligence as would prevent a recovery, but upon the theory that the defendant company was guilty of no negligence, relatively to the person injured, which would authorize a recovery. Under the law of this State, when an injury is shown to have been inflicted by a railroad company, the presumption arises that such injury was negligently inflicted. Civil Code, § 2321. And unless it be made to appear that the company, its agents and servants, have exercised all ordinary and reasonable care and diligence, or that the injury was inflicted by the consent of the person injured, or caused by his own negligence, or that the person injured, by the exercise of ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, a recovery must result. In the present case the injury was proved to have been inflicted; the presumption of negligence thereupon arose against the company; and the sole question is, was the trial judge authorized to say as a logical inference that the facts submitted in evidence showed that the defendant had exercised all ordinary and reasonable care and diligence, and therefore rebutted the presumption of negligence, or, conversely, that such facts showed no negligence on the part of the defendant in the infliction of the injury?

In the management and operation of its line of railroad and cars in the streets of the city of Macon, the law imposed upon the defendant the duty of exercising ordinary care and diligence to avoid injury to pedestrians and travelers generally upon such streets, as well as to their property. Actionable negligence arises essentially from (1) a legal duty; (2) a breach of duty by failure to observe due care; and (3) such breach proximately causing damage. The question as to whether a legal duty existed to the party injured is one of law, and therefore for the court to pass upon. Whether there has been a breach of that duty, and whether it proximately caused damage to the plaintiff, are questions which depend upon circumstances, and therefore are usually to be determined by the jury. 16 Am. & Eng. Ency. Law, p. 463. If, being charged with such a duty, the defendant has omitted to do something which a reasonable man, guided upon those con-

siderations which ordinarily regulate the conduct of human affairs, would do, or has done something which a reasonable and prudent man would not have done, negligence is established. Generally such a question is not to be decided by the judge, but, being a question of fact depending upon the various facts and circumstances attending the case, should be submitted to and decided by twelve men, drawn from various walks of life, who may apply to its solution their average judgment and experience. 2 Thompson on Trials, § 1662. Therefore, while in almost every case that arises there exists some element which makes the question one for the jury, this rule is not invariably applied. If, conceding to all the evidence the greatest probative force to which, according to the law of evidence, it is justly entitled, the case is such that reasonable men, unaffected by bias or prejudice, would be agreed concerning the absence or presence of due care, the judge would be quite justified in saying that the law deduced the conclusion accordingly. If the facts are not ambiguous and there is no room for two honest and apparently reasonable conclusions, then the judge should not be compelled to submit the question to the jury as one in dispute. Indeed, where there is no evidence of negligence, or so little that no reasonable man could from it find the fact of negligence, it is error to submit the matter to the jury, but a nonsuit should be ordered by the court. The case should not go to the jury where fair-minded men would not differ as to whether the inference of negligence should be drawn from the facts, taken most strongly against the defendant. 2 Thompson on Trials, § 1665 et seq.; 16 Am. & Eng. Ency. Law, pp. 466, 467; Cooley on Torts (2d ed.), 804. It is upon this principle that courts have been warranted in declaring that a failure to look and listen on approaching a railroad is negligence; that falling asleep upon or walking upon a railroad track or trestle is negligence; that attempting to cross a railroad immediately in front of a moving train is negligence; and it is upon this principle that the law of inevitable or unavoidable accident must rest. For it must be remembered that negligence is not a fact which is the subject of direct proof, but an inference from facts

put in evidence. As a matter of juridical law, no court could say that this act, or that act, constituted negligence, unless there was a statute declaring that such act should be treated as negligent; for, otherwise, negligence is always a logical inference to be drawn or deduced from all the circumstances of the case. Wharton's Law of Negligence (2d ed.), § 420 et seq. Courts must take notice of that which is matter of common knowledge and experience, and when the plaintiff's case fails to disclose any act of negligence, when judged in the light of such knowledge and experience, he shows no right to a recovery. Gaynor *v.* O. C. & N. R. Co., 100 Mass. 21. There is a line of demarcation between injuries inflicted under circumstances which impute negligence, and injuries inflicted under circumstances which all reasonable minds at once fix as the result of unavoidable accident. There must be circumstances under which a court may say, as a logical inference, that a duty imposed has been fully discharged. So also there must be circumstances under which a court may say that the duty imposed did not involve the taking of this or that precaution. There must be cases in which human foresight, in the exercise of ordinary care and prudence, ceases to be responsible, and injuries resulting from a pursuit of lawful business deemed accidental.

In Shear. & Red. on Neg. § 56, the rule is stated to be, that "when the facts are clearly settled, and the course which common prudence dictated can be clearly discerned, the court should decide the question as a matter of law," citing Beisiegel *v.* New York Central R. Co., 40 N. Y. 9; Stubley *v.* N. W. R. Co., L. R. 1 Exch. 13; Crafton *v.* Metropolitan R. Co., L. R. 1 C. P. 300.

In the present case the acts of negligence relied upon for a recovery were, (1) that the car was running at an unusual and illegal rate of speed; and (2) that in approaching the pile of lumber which had been permitted to remain in the street for a considerable length of time and which was very near the track of the defendant, no gong was sounded, nor other notice given of the approach of the car. The evidence, however, does not show that the car was being run at an unusual rate of speed;

nor was it contended that the rate of speed at which it was running was beyond the limit authorized by the municipal ordinance; nor was it claimed or shown that there was any law or ordinance which required the gong to be sounded on approaching an obstruction in the street. The evidence shows that the obstruction, being a pile of lumber which had been placed in the street by private parties who were engaged in erecting a building near by, was lying in the street longitudinally with and very near the track, at a point intermediate of its intersection with other streets. At the point where the obstruction was lying the track was straight; and there is no evidence tending to show that the motorman was not on the lookout. On the contrary it appears that everything possible was done to prevent the injury after the child came from behind the pile of lumber to a point where it was possible for him to be seen by the motorman. It appears that the child suddenly came on or near the track from behind the pile of lumber, where it was impossible for him to be seen, and stepped immediately in front of the car or ran against the front portion of it; the only witness who saw the child prior to the accident testified, in effect, that he got a mere glimpse of him as he came from behind the pile of lumber, and in an instant the moving car had obstructed the view. There was no evidence that children were in the habit of playing at this particular point; nor that on this particular occasion the children were making any noise, nor was any other fact or circumstance shown from which notice to the motorman that the children were behind the pile of lumber could be inferred. The injury occurred in the daytime, and the evidence is undisputed that the motorman could not possibly have seen the child in time to prevent the accident. The question, therefore, is practically narrowed down to whether the motorman was negligent in failing to sound the gong in approaching this obstruction.

It is undoubtedly the duty of the motorman, in propelling a car through the public streets, to notice the presence of other vehicles and pedestrians ahead of his car, and at all times be watchful to see that the way is clear; and where he has reason to apprehend danger, or should in the exercise of ordinary

care become cognizant of danger, he should regulate the speed of his car so that it may be quickly. stopped should occasion require it.    Humbird v. Union St. Ry. Co., 19 S. W. Rep. 69. If a person be seen upon the track, who is apparently capable of taking care of himself, the motorman may assume that he will leave the track before the car reaches him; and this presumption may be indulged so long as the danger of injuring him does not become imminent, but no longer.    But he can not act upon that presumption with reference to a child too young to appreciate its danger.    Galveston City Railroad Co. v. Hewitt, 67 Texas, 473, 474, 480.    Thus where a child is seen, or in the exercise of ordinary care could have been seen, running toward, near or upon the track, it is the duty of the motorman to take such precautions as will prevent a collision. Shenners v. West Side St. R. Co., 78 Wis. 382; Mallard v. Ninth Ave. R. Co., 27 N. Y. St. Rep. 801; Ihl v. Forty-Second Street & Grand Street Ferry R. Co., 47 N. Y. 317 ; Strutzel v. St. Paul City R. Co., 50 N. W. Rep. 690.    The degree of diligence required is proportionate to the duty imposed, and the degree of negligence imputed corresponds to the degree of diligence exacted.    If to a reasonable mind, viewed, not from results, but from the situation and surroundings as they existed at the time of the act which produced the injurious effects, there was no impending danger, no diligence could be exacted.    Ordinary care is a relative term, the standard of which increases or diminishes accordingly as the danger is greater or less.    If the happening of an event is beyond human anticipation, no one would be negligent in failing to take precautions against that event.    Accordingly, if a child suddenly and unexpectedly appear in the vicinity of a railroad-track, under such circumstances that by the exercise of proper caution and attention the motorman could not have discovered his presence in time to avert an accident, the company will not be liable.    Thus in the case of Kennedy v. St. Louis R. Co., 43 Mo. App. 1, where it appeared that a young girl was run over by one of the defendant's street-cars at a crossing on. Broadway in the city of St. Louis, and it was shown by the evidence that an ice-wagon was on the east side of the street and the girl ran behind it

and upon the defendant's track immediately in front of the mules, that there were other wagons near the point of accident when it occurred, that the driver was looking toward the river (to the east), and that the driver stopped the car as quickly as he possibly could after the child came upon the track and screamed, the court held that these facts showed no negligence on the part of the driver, nor any facts from which the jury could reasonably infer such negligence; that the injury was the result of an accident so far as the defendant was concerned, and therefore the plaintiff was not entitled to recover.   So also in the case of Baker *v.* Eighth Ave. R. Co., 16 N. Y. Supp. 319, where it appeared that a child eight years old started across the street immediately behind an up-town car, near the middle of a block where there was no crossing, that the horses of a down-town car came immediately in front of her as she got between the tracks, and that the driver on seeing her pulled his horses away from her, so that she was struck and knocked down by the flank of one of them and injured by the car-wheel passing over her foot, that the driver had his face turned away from the child and that his attention was first attracted to her by the horse's collar striking her, it was held that, as the child's crossing immediately behind the up-town car was not to be anticipated, the action of the driver was, at the worst, an error of judgment, and that the evidence would not sustain a finding of negligence.

In the present case the car, as we have said, was not being propelled at an illegal or, indeed, unusual rate of speed; the track was straight and clear; it was in the daytime; no children were in the habit of playing about the pile of lumber; on this occasion they were so noiseless that persons sitting on a porch just opposite were not attracted by them; there was nothing to put the motorman on notice that they were present; and the conclusion is inevitable that the injury was the result of accident or misfortune.

*Judgment affirmed.   All the Justices concurring, except Atkinson, J., dissenting.*