## 5601.  BARNETT *v.* SAVANNAH ELECTRIC COMPANY.

1. So far as the evidence is concerned, a verdict for either party would have been authorized.
2. No error in the charge of the court requires a new trial.
(*a*) In the absence of an allegation that the defendant or its servants were negligent in failing to keep proper lookout in anticipation of the presence of persons or children at, near, or upon the tracks of the defendant street-car company, and of any request for instructions to the jury on this subject, the instructions given were sufficient to direct the attention of the jury to the testimony introduced in regard to the habits of children to play in the street in question, and to instruct them as to the bearing of this testimony upon the particular acts of negligence alleged.
(*b*) An instruction to the effect that "ordinary care and diligence is the care and diligence which the street-car company owes and owed to pedestrians upon the street and persons using the street, of whatever age," means the care and diligence which every prudent man would use under the peculiar circumstances, and is not subject to the criticism that it is an expression or intimation of opinion on the part of the court that there might have been negligence on the part of some one in relation to the child alleged to have been injured; especially in view of the fact that the court had previously told the jury that the plaintiff, as an infant of tender years, was not chargeable with any duty to care for her own safety, and that *no negligence of her parents could be imputed* to her. Viewed in connection with the context in the charge, the instruction was favorable rather than unfavorable to the plaintiff.
(*c*) An instruction abstractly correct can not be attacked because additional instructions which might have been appropriate were not given.
(*d*) The word "would" is often interchangeable with the word "should," and, as referring to the duties of the employee in the present case, it does not appear that the plaintiff was injured by reason of the fact that the court used the former rather than the latter word.
3. The court did not err in overruling the grounds of the motion for a new trial based upon the evidence alleged *to be newly discovered, since it was merely cumulative and impeaching, and it was not probable that it would produce a different result on another trial.*

DECIDED SEPTEMBER 23, 1914.

Action for damages; from city court of Savannah—Judge Davis Freeman. February 11, 1914.

*Anderson, Cann & Cann, C. N. Feidelson, T. F. Walsh Jr.,* for plaintiff.

*Osborne & Lawrence,* for defendant.

RUSSELL, C. J.  The plaintiff, who is a child less than three years old, brought an action by her next friend against the Savannah Electric Company, for damages on account of being run over by a car of the defendant, which cut off one of her feet. Upon the trial

the jury returned a verdict for the defendant. The plaintiff excepts to the refusal of her motion for a new trial, based upon the usual general grounds, and upon various exceptions to the charge of the court, and alleged newly discovered testimony.

1. The petition alleged that the company was negligent, (a) because the car was not equipped with air-brakes; (b) because the car was not equipped with a fender; (c) because when the petitioner appeared in the street at or near the track, the motorman failed to use due diligence to stop the car and avoid striking her; and (d) because the car was operated at a rate of speed in excess of that permitted by a municipal ordinance. By amendment, it was alleged that had the car been equipped with a fender and with an air-brake, the petitioner would not have been injured, if ordinary care had been exercised in their use; and that the speed of the car was between 10 and 20 miles an hour. The evidence was in sharp conflict as to the material issues before the jury. According to the testimony for the plaintiff, the child started across the street in plain view of the motorman. No bell was rung nor any attempt made to stop the car until it was almost upon her. Some of the witnesses for the plaintiff testified that the car was going very rapidly, and some that it was going slowly. All the witnesses for the plaintiff agreed that the car had no fender, and from their testimony it may be inferred either that the car did not have air-brakes, or that there was a failure to use them as promptly and efficiently as they could have been used. On the other hand, there was testimony in behalf of the defendant, in addition to that which came from its motorman and conductor, that the child was on the edge of the sidewalk, at or near a tree about five feet in circumference, and that just as the car was approaching she ran rapidly across the street directly in front of the approaching car, crossed the first rail, and tripped on the second rail and fell with all of her body beyond the track, except the foot and ankle, which were cut off. These witnesses testified that the motorman applied the brakes and made every possible effort to stop the car, and, in fact, they did succeed in stopping it so quickly that only the front truck of the car passed over the child's leg. The testimony in behalf of the defendant was positive that the car was equipped with a fender and with air-brakes, which were suitable and operative. As to the various minor details corroborative of the contentions of each party,

the evidence was as strongly in conflict as upon the main issues. So that it can well be said that so far as the evidence is concerned, a verdict would have been authorized for either party.

2. The only serious complaint presented by the exceptions to the judge's charge is the insistence that the court erred in failing to instruct the jury that it was the duty of the defendant's servants to anticipate the presence of children upon the street, so as to be prepared for an emergency such as actually occurred in this case and to act with due diligence. Upon reviewing the charge as a whole it does not appear that this exception is well taken. It appears without dispute, in the evidence, that the street upon which the plaintiff was injured is much frequented by small children, and the motorman stated that he knew this fact and governed his conduct accordingly. In the testimony of all the witnesses there is reference to the fact that children were accustomed to playing in this street. Though there is reference to this fact in the plaintiff's petition, there is no allegation that the defendant or its servants were negligent in failing to keep a proper lookout in anticipation of the presence of children. Had there been a distinct allegation to this effect, it would have been necessary for the court to specifically instruct the jury with relation thereto. In the absence of such an allegation of negligence, and in the absence of any request for instructions upon the subject, it is our opinion that the instructions of the judge, in connection with his statement of the contentions of the respective parties, were sufficient to direct the attention of the jury necessarily to the testimony which had been offered in regard to the habits of children upon this particular street, and to inform them as to its bearing upon the particular acts of negligence alleged. The court charged that "ordinary care and diligence is the care and diligence which the defendant company owes and owed to pedestrians upon the streets, and persons using the streets, of whatever age. That means the care and diligence which every prudent man would use under the circumstances. It is a relative term,—relative to persons, places, or circumstances. What might, under a certain set of circumstances or at a certain place or certain time, be ordinary care and diligence, might at another time or place or under other circumstances be extraordinary diligence, and, on the other hand, it might be gross negligence. So that what is ordinary care and diligence is dependent upon what every prudent man would do under the circumstances which are developed

by the evidence." The court had already told the jury that this child, being an infant of tender years, was not chargeable with any duty of care for her own safety, and that she could not, legally speaking, be guilty of negligence, and that no negligence of the parent could be imputed to her. The instruction that no negligence of the parent is imputable to the child is excepted to upon the ground that it was an expression or intimation of opinion that there may have been some negligence on the part of some one in relation to the child. But it is very evident to us that this instruction was not an intimation of opinion; and even if the jury had so construed it, the sweeping, though correct, assertion of the judge that no negligence of any other person could be imputed to the child would necessarily be beneficial to the plaintiff's case by causing the jury to eliminate from their consideration the thought of any negligence in regard to the care of the child, even if it had occurred to them from the testimony. The court having told the jury that, no matter what negligence the child or any one else may have been guilty of, the plaintiff would still be entitled to recover, unless the defendant itself was not negligent, and having charged the jury that the question of negligence or diligence was determined by the particular time, place, and circumstances, it seems to us that it was not only natural, but inevitable, that the picture of children playing in the street, as detailed by the witnesses, would be immediately suggested to the minds of a jury of ordinary intelligence. Their minds would also revert to the testimony of the motorman and of the conductor that they knew these children played in the street, and any jury of ordinary intelligence would be likely to assume that any man operating a heavy car where he knew children were likely to be would be negligent if he did not keep in mind the likely contingency of encountering them. If an appropriate request had been presented, it would have been error to refuse instructions to the effect that if the evidence disclosed that it was customary for children to play in that particular street, it would be the duty of the servants of the defendant to anticipate their presence and to exercise the diligence required in view of the probable presence of children on or near the track; this anticipatory duty being that of doing what every prudent man would do under such circumstances. But the instructions as given are unexceptionable, and, of course, a complaint is not well grounded which rests merely

on the fact that instructions in themselves correct were not supplemented by an additional instruction amplifying the charge in accordance with the insistence of one of the parties.

The plaintiff in error complains of the court's use of the word "would" in the instructions which we have quoted (and which appears also in other parts of the charge), and insists that the court should have used the word "should" in referring to the degree of diligence to be used by the defendant's servants. It is frequently true that there is a broad difference between the meaning conveyed by the word "would" and that imported by the word "should;" but as related to the obligations of a citizen or an employee to discharge a duty imposed upon him by law, the distinction is not so apparent, and when used in this connection the two terms may be deemed to be legally interchangeable. See *Atlanta* v. *Harper,* 129 *Ga.* 415 (59 S. E. 230), where a charge using the word "would," as in the present instance, was approved. As to the instructions we have quoted, the case at bar is very similar to *Perry* v. *Macon Ry. Co.,* 101 *Ga.* 400 (29 S. E. 304), and *Macon Ry. Co.* v. *Hamilton,* 9 *Ga. App.* 254 (70 S. E. 1126). In those cases the evidence did not compel the conclusion that the employee of the company was under a duty to anticipate the presence of children, and in the case at bar the servants of the company should reasonably have expected their presence; but since ordinary care requires the defendant's servants to keep a lookout, even where the presence of children is not to be anticipated, ordinary care would require a closer lookout where children might, would, and should be reasonably expected to be. The charge of the court provided for this contingency, and in its general terms covers all the facts of this particular case. As previously stated, if more specific instructions were desired, they should have been requested.

3. The ground of the motion most strongly stressed by the plaintiff in error is that based on the alleged newly discovered evidence to the effect that the motorman was engaged in conversation and looking backward at the time the child approached the car. In the state of the record, we are compelled to hold that this testimony is merely cumulative and impeaching, and that therefore the court did not err in refusing to grant the motion for a new trial upon this ground. With the exception of one or two minor details, which are themselves merely cumulative, none of the evidence as

set out in the affidavits attached to the motion for a new trial is anything more than an attempt to impeach the evidence of the defendant's witnesses. In fact, one of the affidavits contains nothing more than a statement that one of the defendant's witnesses was not on her porch at the time the accident occurred, as she had claimed in her testimony before the jury. The motorman testified that he was looking ahead at the time the child was run over, and was watching for children in the street. The only other affidavit relied on to sustain the motion for a new trial on the ground of newly discovered evidence is from a young lady who denies that the motorman was looking ahead, and asserts to the contrary, that the motorman was looking to one side or backward. We do not consider the newly discovered evidence of sufficient importance to require the grant of a new trial. It would not probably produce a different result at another trial, and, being merely of an impeaching nature, is not cause for a new trial.

<div style="text-align:right">

*Judgment affirmed. Roan, J., absent.*