Argued May 26, reargued September 15, reversed December 5, rehearing denied December 21, 1916.

## SORSBY v. BENNINGHOVEN.*

(161 Pac. 251.)

Municipal Corporations—Streets—Injuries to Persons upon—Speed of Motor Vehicles.

1. Under Motor Vehicle Law (Laws 1911, pp. 266, 267), Section 2, subdivisions 11 and 17, declaring that in passing railroad or street-cars motor vehicles shall be operated upon that side of the street or railroad car with due care and caution for the safety of passengers alighting or descending, but should there be on the left side of the street or railroad car a clear space, motor vehicles shall be permitted to so increase their speed for the necessary distance to negotiate a safe clearance between the street or railroad car and the vehicle desiring to pass, which such speed shall not be deemed excessive, having due regard to the speed of the railroad or street-car, and that the speed on all streets and highways shall be a reasonable speed up to and not exceeding 25 miles an hour, but any speed beyond that shall be unreasonable, it is not negligent for a motorist in passing a street-car where there is a clearance to drive his car at any necessary speed up to 25 miles an hour.

Municipal Corporations—Injuries to Persons on Streets—Negligence.

2. A motorist for the purpose of passing a street-car increased the speed of his vehicle so that he was proceeding at a speed estimated as

---

*For authorities discussing the question of law governing automobiles, see comprehensive note in 1 L. R. A. (N. S.) 215; 4 L. R. A. (N. S.) 1130.

The question as to whether speed of automobiles on public streets is negligence, see notes in 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 488.

Upon the question of reciprocal duty of operator of automobile and pedestrian to use care, see notes in 38 L. R. A. (N. S.) 487; 42 L. R. A. (N. S.) 1178; 51 L. R. A. (N. S.) 990.     REPORTER.

high as 18 miles an hour. The street was clear, and he could not see a young child standing behind a telegraph pole. Just as he was abreast the child it ran out and was struck by the rear fender, the motorist turning his vehicle into the car to escape an accident. *Held,* that the motorist was not liable for the resultant death of the child; for he was not driving at an excessive speed, but was lawfully proceeding in accordance with the express permission given by statute.

[As to law of the road as to automobile and street-car traveling in the same direction, see note in Ann. Cas. 1913E, 1121.]

From Multnomah: DAVID R. PARKER, Judge.

In Banc. Statement by MR. JUSTICE BURNETT.

The plaintiff, W. C. Sorsby, sues to recover damages from Paul Benninghoven, for the death of his four-year old son, alleged to have been caused by the defendant running his automobile upon the child. The allegations of the complaint charging negligence upon the defendant are these:

"That at all times mentioned herein the defendant was the owner of a certain automobile, and on the twentieth day of November, 1912, at about the hour of 5 o'clock P. M., was carelessly and negligently operating and driving said automobile while in an intoxicated condition, and while running south on East Fiftieth Street, between Hawthorne Avenue and East Harrison Street, in the City of Portland, Oregon, carelessly and negligently ran said automobile into the said Sherman Stanley Sorsby, thereby causing the death of the said Sherman Stanley Sorsby.

"That at the time said accident occurred the defendant was carelessly and negligently driving said automobile at a high rate of speed and operating said automobile in a careless and negligent manner, and carelessly and negligently failed to sound any signal when approaching the said Sherman Stanley Sorsby."

"That Ordinance No. 14,030, entitled 'An ordinance regulating the operation of and limiting the speed of automobiles' of the City of Portland, Oregon, provides

that at the place said accident occurred automobiles shall not be driven at a rate of speed to exceed —— miles per hour, and the plaintiff believes, and therefore alleges, that the defendant at the time said accident occurred was driving said automobile at a rate of speed in excess of 25 miles per hour.''

We note in passing that the blank left in this averment for the rate of speed was never filled, and the ordinance referred to was not put in evidence, although the allegation was denied. The plaintiff claims general damages for loss of the services, society and comfort of the child in the sum of $25,000, and special damage for burial expenses in the sum of $180.50.

The ownership of the automobile is admitted, but all other allegations of the complaint are denied. An affirmative defense was to the effect that the death counted upon by the plaintiff was an unavoidable accident so far as the defendant is concerned; for, as he was driving along East Fiftieth Street in the City of Portland, the boy suddenly ran out in an attempt to cross the street, and struck the rear fender of the automobile, whereby he was killed.

The reply traverses the new matter of the answer. From a judgment upon a verdict in favor of the plaintiff, the defendant appeals.

REVERSED WITH DIRECTIONS.

For appellant there was a brief over the names of *Messrs. Moser & McCue, William A. Williams* and *Mr. Roy K. Terry,* with an oral argument by *Mr. Gus C. Moser.*

For respondent there was a brief over the names of *Mr. Cicero M. Idleman* and *Mr. Virgil A. Crum,* with an oral argument by *Mr. Idleman.*

In Banc. Mr. Justice Burnett delivered the opinion of the court.

At the close of the plaintiff's case the defendant moved for a judgment of nonsuit on the ground that the plaintiff had failed to prove a case sufficient to be submitted to the jury. The overruling of this motion is assigned as one of the errors committed by the trial court. A review of the testimony on behalf of the plaintiff therefore becomes necessary.

Without dispute it appears that the defendant with two friends was riding in this automobile on Hawthorne Avenue following a "no-stop" train of two street-cars running east on Hawthorne Avenue and thence south on Fiftieth Street. The accident occurred on the latter street in the outskirts of Portland, where some of the cross-streets had not been improved. As the train came to a switch it slackened its speed, and the defendant turned out to the left as though to pass it. After passing the switch the trainmen increased the speed. The witnesses say that the automobile gained upon the train, and that this continued for about a block and a half when the accident occurred. All the witnesses testifying upon the question of speed gauged that of the automobile by reference to that of the train. H. B. Spaulding, a witness for the plaintiff, answering the question, "What rate of speed was the automobile making at that time?" said:

"The cars traveled from 15 to 20 miles an hour at that hour of the evening; and the automobile was going fast enough to pass the car. It was gaining on the car passing it on the left side."

S. E. True, a passenger on the train and a witness for the plaintiff, told about the automobile coming up behind and alongside the train, and said, speaking of the defendant:

"Well, to my best judgment he had followed us several blocks before we got to Fiftieth Street, where we turned. There he was half a car behind us, to my best memory; he was straddling the rail with his car. I think we slowed down at Fiftieth Street to open the switch, make the turn, and he also slowed down. After we turned on Fiftieth Street, he came right alongside of this back vestibule. I was chewing, and I came near spitting in his car a couple of times. He ran along a few feet, I didn't pay much attention to it. Presently, he got out of sight alongside the car, and the next I knew the car got a bump, and I looked out to see what it was. I didn't know what the accident was then."

He said further:

"I should judge the car was— The rate of speed is kind of a hard thing to solve out; somewhere in the neighborhood of 14 or 16 miles; might have been 18 miles; might have been less; might have been more or less; might not have been over 12 miles."

This witness was accustomed to riding on the car about 300 days in the year, and was familiar with the rate of speed. The motorman in charge of the train testified on behalf of the plaintiff that until he came to the frog at the crossing track he was traveling at the rate of probably 12 or 14 miles an hour, and when he came to cross over to the other track he slowed up to 7 or 8 miles. He says that he then speeded up to between 12 and 15 miles an hour, "maybe a little more, maybe a little less." It is also without contradiction in the testimony on behalf of the plaintiff that the child stood on the sidewalk behind a telephone pole, where he was entirely out of sight of the defendant.

The evidence shows that the automobile was being driven along about 3 feet from the curb on one side and 3 or 4 feet from the train on the other. The witness Spaulding says:

"The little Sorsby boy was standing beside the post on the sidewalk at the time the car was opposite. He had been on the bank a moment before and stepped down on the sidewalk."

He declared that the rear fender of the automobile struck the child. The witness Doan was walking along the east side of the street going south at the time, and says:

"I noticed a couple of poles, saw some children playing around the poles, and I saw a little girl up a couple of feet on a telegraph pole; that is, before I got within 15 feet of the child. As I came up the walk I noticed this little girl climb up and down the pole, or on it. I also noticed some one run across the street from the opposite side, just ahead of the street-car and step up onto the curb, and as the street car went by, the tail end passed, I saw this child start out in the street, that is, just stepped out [witness claps his hands together], the automobile struck him."

He testified:

"I didn't see the automobile, only just as it struck the child and was gone. It was done as quick as that."

He said the child just jumped off the sidewalk to go across. He stated he thought he saw the child cross the street from the west side, and then continued:

"I saw him step up behind the post. Whether he came clear across the street or not, I don't know, but my supposition was he ran across ahead of the street-car, and stepped up behind the post, and when the car went by he started to go back."

This question was propounded to him:

"And it is still your judgment that from where the boy was standing that Mr. Benninghoven, driving the automobile, could not see him until he ran out into the street?"

He answered:

"It is.   He couldn't see him until the boy stepped out from the pole.   I couldn't see him from where I was."

The testimony also shows that at the very moment of the accident the defendant turned his car to the right, away from the child, so that he collided with the train, and that it was the rear fender of the automobile that struck the little fellow.

1, 2. On the question of intoxication but one witness states anything connected therewith, and he avers that immediately after the accident in talking with the defendant he smelled liquor on his breath, but no one says that the defendant was intoxicated.

Recurring to the allegation of negligence, we find it couched in these terms:

"The defendant was carelessly and negligently driving said automobile at a high rate of speed, and operating said automobile in a careless and negligent manner, and carelessly and negligently failed to sound any signal when approaching the said Sherman Stanley Sorsby."

Under Section 2 of Chapter 174 of the Laws of 1911, known as the Motor Vehicle Law, certain specifications are laid down regarding the speed of vehicles. Subdivision 11 reads thus:

"In passing railroad or street-cars operated in any city, town or village in this state, vehicles shall be so operated upon that side of said street or railroad car with due care and caution that the safety of passengers boarding or alighting from such street or railroad car shall be fully protected, and for that purpose

said vehicle shall be brought to a stop, if necessary, but upon the other or left side of said street or railroad car, should there be a clear passage, said vehicle shall be permitted to so increase its speed for the necessary distance to negotiate a safe clearance between said street or railroad car and said vehicle so desiring to pass, and the rate of speed requisite and necessary so to do shall not be deemed to be an excessive rate of speed, having due regard to the speed of said railroad or street-car."

Subdivision 17 is as follows:

"The rate of speed on all streets, roads and highways of this state shall be a reasonable speed up to and not exceeding twenty-five miles an hour, but any speed in excess of twenty-five miles an hour upon any road or highway of this state shall be an unreasonable speed and is prohibited by this act."

If the plaintiff had alleged the rate of speed allowed by the city law, and had met the general issue on that point by introducing the ordinance with proof that the defendant was going faster than the permissible maximum, the result would have been a situation to which could have been applied the doctrine of the majority opinion in *Kalich* v. *Knapp,* 73 Or. 558 (142 Pac. 594, 145 Pac. 22, Ann. Cas. 1916E, 1051), to the effect that violation of a city ordinance, although it conflicts with an act of the legislative assembly is evidence of negligence. In default of these conditions, however, that case does not apply, and the present controversy is judicable by the state statute mentioned.

The highest rate of speed attributed to the street-car by any witness is found in the testimony of Mr. Spaulding that the car traveled 15 to 20 miles an hour, and that the automobile was gaining on it. The enactment referred to says that the speed requisite and necessary to pass the car shall not be deemed to be an

excessive rate. This, of course, must be taken in connection with the other provision prescribing a maximum of 25 miles an hour. Nothing further is shown on the question of the rate at which the automobile was traveling than that it was gaining on the car. This would be true if it was going only 21 miles an hour. Admittedly there may and often will be cases when it would be gross negligence to move an automobile at all; but in a situation defined by the statute, nothing else being shown, the motorist is entitled to travel as the law permits. All the testimony for the plaintiff, however, shows that the street was clear when Benninghoven turned out to pass the train. The child was not in sight, but, on the contrary, was concealed behind the telegraph pole. There was nothing whatever to intimate his presence to the defendant, and, even if the latter had known that the little one was standing on the curb by the telegraph pole, still the fact would have remained that he was in a place of safety.

The way was clear to the driver of the automobile. He was doing what the statute expressly permits him to do, and he was doing it in a lawful manner without any suggestion of the presence of the boy. The little fellow stepped out into the street, and had but 3 or 4 feet to traverse before he collided with the defendant's vehicle. Considering the matter most favorably for the plaintiff, it is plain that, in order to avoid the collision, the defendant would have had to travel at least the length of his machine before the child covered the 3 or 4 feet. Under such circumstances, with the appliances at hand, no human agency could have stopped the automobile in time to prevent the accident. The defendant did everything within his power to avoid the child, turning his car so far to

the right that he collided with the train. The misfortune would have happened if the automobile had been going only 5 miles an hour. To hold the defendant liable in those conditions would be tantamount to making him an absolute insurer against all manner of casualties happening to anyone on the street while he was passing.

The case presented is like the hypothesis suggested by Mr. Chief Justice Bean in *Wallace* v. *Suburban Ry. Co.,* 26 Or. 174, 177 (37 Pac. 477, 478, 25 L. R. A. 663) :

"If we assume, as does the argument for the defendant, that the child, without the fault or negligence of the defendant, suddenly and unexpectedly appeared on the track immediately in front of the car, we might conclude that her death was an unavoidable accident, and that the rate of speed would be immaterial, for upon such an appearance upon the track no precaution could have prevented the accident."

In that case the court refused to apply the principle thus announced by the learned judge because the facts were in controversy. Here there is no dispute on that score. It is unquestioned that the child hitherto concealed by the pole suddenly and unexpectedly stepped out into the street evidently alongside of, and not in front of, the automobile and collided with the back fender. So far as the speed is concerned, the pity is that the defendant was not driving at a much greater rate; for then he might have escaped the baby's impact.

On the subject of failure to give an alarm Mr. Chief Justice Magie, writing in *Graham* v. *Consolidated Traction Co.,* 64 N. J. Law, 10, 13 (44 Atl. 964, 965), says:

"The clear evidence is that the boys, in their play on the sidewalk, gave no indication that they intended to cross the track. No signal nor warning as to them would have been appropriate or required. When they rushed from the sidewalk and ran directly in front of

the car, the motorman made every effort to arrest the motion of the car. The car was visible and visibly moving; the signal by the gong would have been of no avail. From the evidence an inference of failure of duty in this respect could not reasonably be drawn.''

In that instance the decedent was a boy of four years and four months of age whom the motorman saw playing on the sidewalk adjacent to the street on which the car was passing. The present case is much stronger because the little fellow was concealed from the view of the defendant and gave no intimation that he was moving, or likely to move. In *Stahl* v. *Sollenberger,* 246 Pa. 525 (92 Atl. 920), a little boy suddenly ran from the footway on a bridge into the driveway provided for vehicles and was killed. The court said:

''The defendant cannot fairly or reasonably be charged with negligence in failing to stop his automobile and avoid the accident, unless it appeared that the boy entered the roadway at a sufficient distance from the automobile to permit of its being stopped before the collision occurred. If the boy suddenly left the footway, at a place where the driver had no reason to expect him to do so, and ran directly in front of the automobile, the result could hardly have been other than disastrous, even though the machine had been moving at a very reasonable rate. * * But in the present case, with no evidence that the child appeared upon the roadway in front of the car at any appreciable distance ahead of it, and with no circumstance shown that would tend to suggest to the driver, prior to the happening of the accident, the probability of the boy leaving the footway, or getting into danger upon the driveway, we think the trial court was right in holding that there was not sufficient proof of any negligence causing the accident, on the part of the defendant, to justify the submission of the question to the jury.''

Other instructive precedents are *Curley* v. *Baldwin* (R. I.), 90 Atl. 1; *Hyde* v. *Hubinger,* 87 Conn. 704 (87 Atl. 790); *Paul* v. *Clark,* 161 App. Div. 456 (145 N. Y. Supp. 985); *Perry* v. *Macon Consolidated St. Ry. Co.,* 101 Ga. 400 (29 S. E. 304, 3 Am. Neg. Rep. 755); *Winter* v. *Van Blarcom,* 258 Mo. 418 (167 S. W. 489).

In brief, the allegation of excessive speed is not proven when measured by the motor vehicle law, which is the legislative standard. Owing to the admitted suddenness with which the child appeared from his concealment behind the pole, the accident was unavoidable, and the rate of speed therefore became immaterial, because, no matter how fast or slow the defendant was traveling, there was no time after he discovered the child that he could have stopped the car soon enough to avoid hurting him. On the contrary, the evidence for the plaintiff affirmatively shows that by swerving to the right all was done that was humanly possible under the circumstances to prevent injury to the boy. Considering the statute and giving to the plaintiff every inference that can be drawn from his own testimony, he has not proven any legal blame against the defendant. The loss of his sprightly little son is no doubt a severe affliction to the parent, but it does not justify the visitation of a money judgment upon the defendant. It is unnecessary to consider the other questions raised by the appeal.

The judgment of the Circuit Court is reversed, with directions to enter a judgment of nonsuit in favor of the defendant.      REVERSED WITH DIRECTIONS.

MR. JUSTICE EAKIN absent.

MR. JUSTICE BEAN dissents.

MR. JUSTICE HARRIS concurs in the result.