CHRIS NELSON, Appellant, v. CLAYTON MITTEN, Appellee.

No. 42438.

JUNE 23, 1934.

REHEARING DENIED OCTOBER 25, 1934.

White & White, and L. Dee Mallonee, for appellant.

Kimball, Peterson, Smith & Peterson, and Charles S. White, for appellee.

MITCHELL, J.—Chris Nelson is a farmer residing in Shelby county, Iowa, about 10 miles northeast of Harlan, and was, at the time of the injuries he received, fifty-nine years of age. His hearing was good; his eyesight was good; and he had no defect in walk. He was familiar with the operation of automobiles and trucks.

Clayton Mitten was an experienced truck operator and owned and operated a truck. The injuries of which Chris Nelson, the appellant, complains, occurred at his own farm, between 9 and 10 o'clock on the forenoon of September 9, 1932. At the request of a brother of the appellant, Nels Nelson, who resided some 12 miles distant from the appellant's farm, the latter had arranged to have Mitten come to the farm of the appellant on said date for the purpose of hauling therefrom to the farm of the said Nels Nelson a truck load of rent-share oats belonging to the said Nels Nelson and grown on land leased by the appellant. For this trucking Nels Nelson was to pay. The truck of the appellee, Mitten, was a Chevrolet, capable of hauling a load of 1½ tons or 2 tons of oats. It was 20 feet long. When the truck reached the appellant's farm, it was being driven by Mitten, and the appellant led the way for it, on foot, through three gates, going west along the north side and then south along the west side of the lot in which the oats were to be loaded, and finally entering the lot at the southwest corner thereof through a gate, which the appellant opened to let the truck pass and then closed behind the truck. Mitten drove the truck in and backed it to within about 8 feet of where the oats were stored in a hog house, forming the east boundary of said lot. This building was about 56 feet long, in the center of which the oats were stored. The roof of the hog house, in which the oats were stored, was so low that the top of the truck was too high to get under it, and in

order to get the truck up against the hog house so that the oats could be shoveled into it, the appellant and the appellee dug trenches for the wheels of the truck to run in. The trenches east and west were about 6 inches deep and at the east end about a foot deep. Mitten then backed his truck into the trenches and against the hog house. The front part of the truck was then lower than the back part because the land sloped towards the west. The appellant and appellee then went into the hog house from the north end and shoveled the oats into the truck. Returning, they put the end gate of the truck in from the north side of the truck. The appellant and the appellee engaged in some conversation, and at that time they stood about 4 feet north of the truck and 5 or 6 feet west of the hog house. The appellee then entered the truck, started the motor, and moved forward about 5 feet. When the truck was 5 feet west of the hog house and while the rear wheels were still in the trench, the appellant ran or walked rapidly in a diagonal direction from the place where he had been standing, behind the truck. The motor of the truck for some reason or other stopped running, and the truck backed up, and, when the appellant reached a point in the middle of the rear end of the truck, he was crushed against the hog house and severely injured.

The appellant commenced an action against the appellee for damages, alleging that the appellee was guilty of negligence because he had not sounded a warning before he backed up, because of his failure to stop the backing of the truck by the use of the brakes or other appliances, and because he failed to exercise reasonable care to ascertain before starting forward with the loaded truck, where the appellant then was, and because he failed to ascertain whether the appellant was in a position of danger by reason of the appellee operating his truck, loaded as it was, and proceeding on more or less uneven ground. Appellee filed an answer, in which he denied that he was guilty of any negligence and alleged the injury was due entirely to the contributory negligence of the appellant. The case proceeded to trial. Evidence was offered, and at the close of the appellant's evidence the appellee made a motion to direct a verdict. The motion was sustained, and from the ruling of the lower court the appellant has appealed to this court.

Thus we must look to the record to see whether or not the lower court erred in sustaining the motion for a directed verdict.

In the case of Williams v. Cohn, reported in 201 Iowa 1121,

206 N. W. 823, this court laid down the essential elements necessary in every case of actionable negligence as follows: (p. 1122)

"Some degree of negligence in cases of this character must be established as the foundation of legal responsibility. Borland v. Lenz, 196 Iowa 1148, 194 N. W. 215. Negligence is predicated on duty and presupposes the omission to fulfill the obligation imposed. This duty is imposed either by statute or by rule of common law. It may be owing to an individual or to the public generally, but he who seeks damage for an injury sustained must predicate and prove that the damage arose, without fault on his part, through the omission of a person charged with a duty. Fisher v. Ellston, 174 Iowa 364, 156 N. W. 422.

"Three essential elements are involved in every case of actionable negligence: (1) The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; (3) an injury proximately resulting to the plaintiff from such failure.

" 'When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient.' Upp v. Darner, 150 Iowa 403, 130 N. W. 409, 32 L. R. A. (N. S.) 743, Ann. Cas. 1912D, 574."

In a very recent decision of this court, Crutchley v. Bruce, 214 Iowa 731, 240 N. W. 238, this court said: (pp. 734–736)

"We had a similar question before us in Pettijohn v. Weede, 209 Iowa 902, 227 N. W. 824, and in McDowell v. Interstate Oil Co., 208 Iowa 641, 224 N. W. 58, wherein we held that, even though the automobile which caused the injury was being driven at an excessive or unlawful speed, this would not justify recovery, unless it appeared that such excessive speed was the proximate cause of the injury. Even though the driver of an automobile may violate the law in some particular, still this cannot be made the basis of recovery by an injured party, unless the illegal act was in some way the proximate cause of the injury. For example, a driver might not have his car properly equipped with brakes in good order, as required by the statute, but still, unless such failure was in some way the proximate cause of an injury, it could not be made the basis of recovery. As bearing on the question of excessive speed not being a ground of recovery when not shown to

be the proximate cause of the injury, see Silberstein v. Showell, Fryer & Co., 267 Pa. 298, 109 A. 701; McAvoy v. Kromer, 277 Pa. 196, 120 A. 762; Bowman v. Stouman, 292 Pa. 293, 141 A. 41; Havermale v. Houck, 122 Md. 82, 89 A. 314; Moran v. Smith, 114 Me. 55, 95 A. 272; Sorsby v. Benninghoven, 82 Or. 345, 161 P. 251; Winter v. Van Blarcom, 258 Mo. 418, 167 S. W. 498; Burlie v. Stephens, 113 Wash. 182, 193 P. 684. In the instant case, the accident would have happened just as readily had appellant been driving his car at a much less rate of speed and well within the statutory limit. It was not the speed of appellant's car that was the proximate cause of the injury to the boy. * * *

"We are constrained to hold that under the circumstances disclosed in this record it cannot be held that the failure of the appellant to sound his horn, if the jury could find that he failed so to do, was the proximate cause of the injury to the boy. Nor can we hold that under the circumstances disclosed any duty rested upon the appellant to sound his horn as he was about to pass the standing milk truck. In broad daylight the appellant was approaching a standing milk truck, on the proper side of the highway and partly off the paved portion. The driver of the truck was standing beside it. There was not the slightest thing to indicate to the driver of the automobile in any way that a boy was among the milk cans on the rear portion of the truck, or near there, and that he might suddenly dash into the path of appellant's automobile. A driver could not reasonably be expected, under such circumstances, to anticipate that a person might so appear suddenly in his path, and hence be required to give a signal of his approach. It cannot be said that a person of ordinary and reasonable care and prudence is guilty of negligence in not anticipating that from behind every standing vehicle he may pass on the highway some pedestrian may suddenly dash into the pathway of his car, and that he is guilty of negligence in not giving a signal of his presence in passing every such standing vehicle."

In the case at bar the appellant testified as follows:

"Q. Had it moved five feet? A. Yes sir.

"Q. You never saw it after that? A. No, I never saw it after it moved five feet.

"Q. The next time you saw the truck was when you say you were struck and hollered 'Stop, Stop?' A. Yes sir.

"Q. You didn't look at the truck from the time you entered until it struck? A. I looked at it when I run.

"Q. It hadn't yet got out of the trench? A. It must have been on the point of it, because that is the only way he could come back.

"Q. Just answer my question, the truck hadn't yet gotten out of the trench? A. It was about on the top, about a balance.

"Q. And when he came to that point the motor killed and it came back of its own force and caught you? A. Yes sir.

"Q. That happened just in a second? A. Well, it didn't take very long.

"Q. Just long enough for you to run in there and get caught, that is all the time it took? A. That is all the time it could have taken.

"Q. You never looked at the Chevrolet truck at any time after you saw it five feet away? A. I never seen it. I don't know where it is.

"Q. You saw it five feet away, you were then four feet north of the truck and six feet west of the hog house? A. Something like that, not over six feet, might not have been over five.

"Q. Five or six feet west of the hog house and four feet north of the truck? A. Yes, sir.

"Q. The last time you saw the truck it was five feet away? A. Yes, at the time I saw it.

"Q. The wheels were in the trench? A. You could hardly call it on the trench, it was right on the teeter.

"Q. And that was the last time you saw the truck? A. Yes, sir, and the engine going.

"Q. Never got farther than five feet? A. No, sir.

"Q. And never got completely out of the trench? A. I don't suppose."

Thus it appears from the appellant's own testimony that at the time appellee's truck started forward he was in a place of safety, being at that time 6 feet west of the hog house and 4 feet north of the truck. The appellee had no knowledge that the appellant was going to go behind the truck. There is not a single word in the entire record to show that the appellee knew the appellant was going to run behind the truck. The driver of the truck was not legally bound to anticipate or know the intentions or purposes of the appellant, who was in a zone of safety immediately prior to the collision. No one would have anticipated that the ap-

pellant would go behind that truck when it had moved but a few feet away from the hog house; that he would run in a diagonal direction directly behind the truck. There was no duty on the part of the appellee to protect the appellant from the injury of which the appellant complains, for the appellee had no notice or no idea that the appellant would move from the zone of safety in which he was, into the dangerous position behind the truck. The driver of the truck was under no legal obligation to make search around and under his truck, for, when he left the appellant to get into the truck to drive it away, the appellant was in a place of safety. There was no showing in this record why the appellee should have sounded the horn. Had he sounded the horn it would not have prevented the accident, for when he started to move the truck forward the appellant was in a place of safety. There is no showing of any actionable negligence on the part of the appellee which was or could have been the proximate cause of the injuries complained of by the appellant, and the evidence shows as a matter of law that the appellant voluntarily placed himself in a position of danger without any previous notice to appellee of his intention so to do. Certainly, in face of such a record, it was the duty of the trial court to direct a verdict, and the judgment and decree of the lower court must be, and it is hereby affirmed.

CLAUSSEN, C. J., and EVANS, ALBERT, KINTZINGER, ANDERSON, and DONEGAN, JJ., concur.