ALBERTA LAUDNER, Administratrix, Appellee, v. E. W. JAMES, Appellant.

No. 43243.

MARCH 17, 1936.

REHEARING DENIED JULY 31, 1936.

Senneff, Bliss & Senneff, for appellant.

Willoughby, Strack & Sieverding, and Mallory & Leming, for appellee.

MITCHELL, J.—E. W. James, a truck operator, contracted to deliver a load of coal on the 26th day of December, 1934, to the farm home of Amos Laudner, located a few miles from the town of Sheffield. The weather was very cold. The house in which Laudner lived had a main part, which extended east and west, and on the south side there was a lean-to or kitchen, with an outer door on the east side. The cellarway, into which the coal was to be shoveled, was on the east side of the main part of the house. The truck was backed up to the cellarway opening, but because of the ice and snow the truck did not straddle the opening but the left wheel or north-side wheel was backed onto the south side of the casing of the cellarway, leaving the outside dual wheel handing over the opening. When Sliger, the driver, brought the truck to a stop in that position, he left it in reverse gear. Laudner assisted in unloading the coal, which was shoveled into the cellarway. When they had finished, it was somewhere between 5:30 and 6 in the evening. Both Sliger and Laudner got out of the rear end of the truck at the same time. Sliger testified that Laudner went to the south side and when he last saw him was about two feet south and four feet west of the southwest corner of the truck. Sliger went around on the north side of the truck, to the cab, where he turned on the switch and adjusted the gas, and then he went around to

the front and cranked the motor. After leaving the rear end of the truck, Sliger could not see Laudner due to the fact that his vision was cut off by the truck. No one else saw Laudner after that time. Because the truck was in reverse gear when the motor was cranked, it moved backwards. When it was stopped Laudner was found lying on the ground, to the rear of the truck, his feet about two feet from the house, his head resting against the cellar casing. He was carried into the house, but before the doctor arrived he had died. His widow was appointed administratrix of his estate and commenced this action against E. W. James as the owner of the truck, to recover damages. Evidence was offered by the plaintiff. Defendant then made a motion for a directed verdict, which motion was overruled. The defendant then rested without offering any testimony and the case was submitted to a jury, which returned a verdict in the amount of $5,000 in favor of the plaintiff. Defendant, being dissatisfied, has appealed to this court.

■■■ I. The first error argued by the appellant is that there was no actionable negligence upon which the verdict could be based.

When Sliger backed the truck in beside the cellarway and within about four feet of the house, he left the truck in reverse gear. As a truck driver, he of course knew that with the starting of the motor, being in reverse gear, the truck would move backwards. While the appellant does not concede that cranking the motor while the truck was in reverse gear was a careless and negligent thing to do, he says, even granting that it was, that that does not make for liability, and the right of appellee to recover depends upon whether or not his employee was bound to anticipate that Laudner would leave what appellant designates as a place of safety and go to a place of danger.

It is the contention of the appellant that Laudner was in a place of safety. But this record shows without any dispute that the last and only person who saw Laudner before the accident was Sliger, the driver of the truck, and he placed Laudner at that time two feet south and four feet west of the truck. But, it must be kept in mind that this was not at the time that the truck was being cranked. Laudner is placed in that position at the time that he and Sliger left the rear end of the truck. From the moment that Sliger stepped across the cellarway he had no view or knowledge of where Laudner was. How long

it was between that time and when the truck was started does not appear in the record; but there was a space of time during which Sliger was walking from the rear end of the truck to the cab, turning on the switch, adjusting the gasoline, then going to the front of the truck to crank the motor. No one says that Laudner was in that place of safety, to wit, two feet south and four feet west of the truck, at the time that the motor was cranked. The physical facts prove that he was not there because he was caught between the house and the truck, and the record shows that the truck moved backwards the instant it was cranked.

The appellant argues with a great deal of force that the case of Nelson v. Mitten, 218 Iowa 914, 255 N. W. 662, is directly in point with the case at bar, and that unless we reverse this case we must overrule the Nelson case. The writer of this opinion is guilty of writing the Nelson opinion, and cannot agree with able counsel who represent the appellant that it is necessary to overrule that opinion. In the Nelson case the evidence shows, and in the opinion it is set out, that at the time the truck was started Nelson was in a place of safety. He testified to that himself. It was after the truck started that Nelson saw fit to leave that place of safety and run behind the truck in a diagonal manner. Had he remained where he was before the truck was started, he would not have been injured. Whereas, in the case at bar, there is no evidence to show that Laudner at the time the truck was being cranked was in a place of safety. In truth and in fact, the physical facts show that he was behind the truck at that very moment; otherwise he would not have been injured.

Laudner had assisted in unloading the coal. This was his home and he had a right to be there. He may have been picking up coal that had dropped behind the truck or he may have been closing the cellar door.

Sliger knew, or as a reasonably prudent man should have known, that cranking the truck would cause it to start, and, being in reverse gear, to move backwards under its own power. He knew that the decedent was at the rear of the truck. True, not behind the truck, but in the vicinity of it. Laudner had a right to assume that Sliger would act as a reasonably prudent and careful person. The only excuse offered for this tragedy is that Sliger forgot he had left the truck in reverse gear. He

had no right to start the truck in motion without a driver and move it in a direction not expected or even remotely dreamed of. Certainly, it was a question for the jury to say, under the circumstances set out in this case, whether the employee of the appellant acted as a reasonably prudent man would have acted under the conditions that confronted him.

II. It is next claimed that there is no competent evidence that the decedent was injured by being crushed by the truck.

With this we cannot agree. The coroner testified that he examined the body three or four hours after the accident; that he found marks on the back of the decedent where the rear of the truck box would strike him if he had been standing with his back to the truck at the time of the accident; that in his judgment Laudner died of internal hemorrhages, probably caused by the crushing of the kidneys or liver, the vital parts that would have been injured if the decedent had been caught between the truck and the house. In addition to this, there is the testimony of the witnesses who were in the house at the time the accident occurred and who heard Laudner cry out and felt the jar at the time the truck moved backwards, and add to this the fact that Laudner's body was found lying on the ground between the house and the truck. Certainly, no one could read this record and come to any other conclusion than that he was killed by the truck backing into him.

III. The appellant complains that the court erred in limiting the cross-examination of the witness Sliger. He was appellee's witness and his direct examination was limited to the things the appellee desired to bring out. On cross-examination objection was made to certain lines of testimony inquired about from the witness, on the ground that it was not cross-examination. The trial court sustained the objection.

This court in the case of Rawleigh Medical Co. v. Bane, 218 Iowa 154, on page 157, 254 N. W. 18, 20, said:

"The trial court has a broad jurisdiction in connection with what it will allow on cross-examination, and this discretion will not be interfered with except in cases where it is clearly abused."

In the case of Burk v. Reese, 143 Iowa 496, at page 500, 121 N. W. 1016, 1018, this court said that the discretion of the trial court in allowing cross-examination "has never been held broad enough to permit the opposing party to go beyond the appro-

priate limits of cross-examination and introduce new matter pertaining solely to his defense. If he proposes to depend upon the same experts used by his antagonists, or desires to use their testimony in support of his defense, he should 'wait his turn' to which in the regular course of trial practice he is entitled.''

In the case of State v. Thomas, 151 Iowa 572, at page 575, 132 N. W. 51, 52, this court said:

''Many complaints are made because of undue limitation placed upon the cross-examination of some of the state's witnesses. This matter is so largely within the discretion of the trial court that reversals are few because thereof.''

We believe the trial court was right in sustaining the objection that was made. It was not proper cross-examination. Appellant had a right to call Sliger as his witness in defense, if he saw fit, but for some reason or other not appearing he did not see fit to do so.

■■■ IV. The appellant complains that the court did not give to the jury certain requested instructions. One of these was requested instruction IX, which read as follows: ''The burden in this case is upon the plaintiff to show by the greater weight of the evidence that the probable consequence of cranking a truck under the circumstances existing in this case will be that the engine will start and the truck move backward under its own power.''

The following is the instruction which the court gave:

''You are instructed that before Orville Sliger could be held to be negligent in cranking or attempting to crank said truck while it was in reverse gear, you must be convinced by the greater weight or preponderance of the evidence that he knew, or acting as a reasonable and prudent man should have known, that to attempt to crank said truck while in reverse gear would cause the engine to start and the truck to move back under its own power.''

It seems to us that the instruction given by the court covers the matter requested by the appellant, and certainly no error was committed in refusing to give the requested instruction.

It is also claimed that the court erred in giving certain instructions to the jury. This court has said time and again that the instructions must be read as a whole and the meaning taken

from such reading. It is unfair to pick out certain sentences or certain parts of the instructions and to give them a strained construction. We find no error in the instruction complained of.

**■■■** Appellant contends that the court erred in giving instruction XII, which gave to the plaintiff the benefit of the "no eyewitness" rule; that this instruction was erroneous for two reasons: First, there was an eyewitness, and, second, the physical facts show just what the decedent did do and therefore there was no room for presumption. The facts show that from the time Sliger left the rear of the truck and turned to the right, he was unable to see Laudner because of the presence of the truck. He stepped over the cellarway and went to the cab of the truck, where he turned on the ignition switch and advanced the gasoline throttle, and then he went around to crank the motor. How long this took him does not appear in the record, but it was some interval, during all of which time he could not observe Laudner. No one else was present. The "no eyewitness" rule applies in this case, because there was no eyewitness to the accident.

In the case of Hittle v. Jones, 217 Iowa 598, on pages 600, 601, 250 N. W. 689, 691, this court said:

"In the case at bar, however, it is claimed by the appellees that the foregoing rule does not apply because there were eyewitnesses to the accident. If there were such witnesses to each material act on the part of the appellant's intestate, then the rule relating to the instinct of self-preservation would not apply. Brown v. McAdoo, 195 Iowa 286, 188 N. W. 7; Stark, Adm'x, v. Tabor & Northern R. R. Co., 161 Iowa 393, 142 N. W. 977; Ames, Adm'x, v. Waterloo & Cedar Falls Rapid Transit Co., 120 Iowa 640, 95 N. W. 161. Nevertheless, if the witnesses who attempt to describe the decedent's actions in a case of this kind did not see him during all the material moments of his actions, the inference of due care may be drawn under the rule relating to the instinct of self-preservation. Gray v. Chicago, R. I. & P. R. Co., 160 Iowa 1, 139 N. W. 934; Platter, Adm'x, v. Minneapolis & St. L. Ry. Co., 162 Iowa 142, 143 N. W. 992; Barrett v. Chicago, M. & St. P. R. Co., 190 Iowa 509, 175 N. W. 950, 180 N. W. 670, supra."

The claim that the physical facts are such as to overcome the presumption of self-preservation is based upon the fact that

the decedent went from a place of safety to a place of danger. This record does not bear out any such claim. Laudner was behind the truck at the time the motor was cranked, for, had he not been there, he would not have been killed. The court did not err in giving instruction XII.

■■■ Appellant argues that the court erred in overruling ground 3 of the appellant's motion for new trial, which reads that "the verdict is contrary to the instruction of the court," which instruction IX, given by the court, reads as follows:

"You are instructed that before Orville Sliger could be held to be negligent in cranking or attempting to crank said truck while it was in reverse gear, you must be convinced by the greater weight or preponderance of the evidence that he knew, or acting as a reasonable and prudent man should have known, that to attempt to crank said truck while in reverse gear would cause the engine to start and the truck to move back under its own power."

It is the claim that the record is wholly devoid of any evidence that Sliger, acting as a reasonable and prudent man, should have known that to attempt to crank the truck in reverse gear would cause the truck to move backwards under its own power. Sliger was a truck driver and familiar with the manner in which it was operated. In this day and age, with the automobile so common, it is hard to conceive of any one not knowing that if a car is left in reverse gear and the motor is started it will go backwards. The writer of this opinion has a young nephew, about five years of age, who, like other boys of his age, is interested in the operation of automobiles and trucks. These boys are familiar with the manner in which these instruments of transportation work, and even they know that if the motor is in reverse gear and it is started the truck will go backwards. Sliger knew, or acting as a reasonably prudent man should have known, that attempting to crank the truck while it was in reverse gear would cause the engine to start and the truck to move backwards under its own power. This is a matter of common knowledge and judicial notice should be taken thereof.

In the case of Dean v. C., B. & Q. R. Co., 211 Iowa 1347, at page 1352, 229 N. W. 223, 225, this court said:

"Furthermore, we may take judicial notice that a car

shifted from high to intermediate gear does create and make additional noise in its operation after the shift is made.''

Many errors are complained of in this case. An examination of all of them convinces us that the defendant has had a fair trial, and that the judgment and decree of the lower court must be, and it is hereby, affirmed.

DONEGAN, C. J., and ALBERT, ANDERSON, KINTZINGER, PARSONS, RICHARDS, and HAMILTON, JJ., concur.