MARTIN RIEDESEL, administrator of estate of LYLE RIEDESEL, appellee, v. DONALD KOCH et al., appellants.

No. 47720.

(Reported in 45 N.W.2d 225)

1314

DECEMBER 12, 1950.

William C. Hanson, of Jefferson, and Whitfield, Musgrave, Selvy, Fillmore & Kelly, of Des Moines, for appellants.

O. W. Harris, of Jefferson, and Meyers & Tan Creti, of Carroll, for appellee.

MANTZ, J.—The action is at law by Martin Riedesel, administrator, to collect damages for the death of his son, Lyle Riedesel. He claims damages by reason of the negligent actions of Donald Koch. The facts will be set forth in the opinion.

I. On the night of April 7, 1949, at about the hour of 7:30, there was a collision on a country highway in Greene County, Iowa, between an automobile owned by defendant R. T. Koch, and then operated by his son, Donald Koch, and a bicycle operated by Lyle Riedesel. In this collision Lyle was injured and died the day following.

Plaintiff, as administrator of decedent's estate, brought suit against R. T. Koch and Donald Koch alleging that the operator, Donald Koch, was negligent in various particulars; that such negligence was the proximate cause of the injuries; that the deceased was free from contributory negligence, and the dam-

ages to the estate of the deceased. Upon trial the jury returned a verdict for plaintiff. Defendant's motion for judgment notwithstanding verdict and motion to grant a new trial were both overruled and, as above-stated, this appeal followed.

II. The principal issue in the case involves the question as to whether under the record the administrator has carried the burden of showing that Lyle Riedesel was not guilty of contributory negligence in the collision which resulted in his death. Defendant virtually concedes that on the other issues, to wit, negligence of defendant (it being the proximate cause) and the resulting damages, there was a jury question.

Defendant argues that the record shows facts and circumstances which fairly considered show that at the time of the accident Lyle Riedesel was guilty of negligence which contributed to his injury and death. The defendant asserts and argues that on the issue of contributory negligence of the deceased the court erred in instructing the jury under what is known as the "no-eyewitness rule", that there was a jury question, claiming that Donald Koch and Edward Henrichs were such eyewitnesses and, consequently, no such instruction should have been given.

When the jury were instructed four special interrogatories were given them. Such are numbered 1, 2, 3 and 4. We will set out Nos. 1 and 2 in full:

"Interrogatory No. 1. Was Lyle Riedesel at the time of and immediately prior to the collision operating his bicycle without a lamp on the front exhibiting a white light visible from a distance of at least 300 feet and at a time more than one-half hour after sunset? Answer 'Yes' or 'No.'

"Interrogatory No. 2. If you have answered Interrogatory No. 1 in the affirmative you will answer the following question: Did the failure of Lyle Riedesel, if there was such a failure, to have a light on the front of his bicycle contribute to the accident in question? Answer 'Yes' or 'No.' "

The jury answered interrogatory No. 1 "Yes"; interrogatory No. 2 "No."

These interrogatories and various criticized instructions will be later commented upon and discussed in this opinion.

III. Before setting out from the record the evidence received on the above issue, we call attention to some of the rules which have been laid down by our court on the question of contributory negligence and the application of the no-eyewitness rule.

The question of contributory negligence in some instances calls for a consideration of what is known as the no-eyewitness rule. This rule and its application has been considered by this court in a large number of cases. Our most recent holding dealing with the question of when and under what circumstances the rule applies was in the case of Rickabaugh v. Wabash R. Co., 242 Iowa —, 44 N.W.2d 659. In that opinion Justice Smith dealt to some extent with the origin and history of such rule and stated that such rule has its application in this state in connection with our requirement in certain cases wherein the party bringing the suit has to plead and prove freedom from contributory negligence and that the no-eyewitness rule was to enable one who was injured to have an inference of ordinary care when direct evidence was not obtainable. In other words, the rule seems to be intended to obviate in some instances the evident injustice of our doctrine and the burden in contributory-negligence cases.

It is a general rule that where a person by his own negligence in some manner or degree contributed to his injury and damage he cannot recover. Wright v. Illinois & Miss. Tel. Co., 20 Iowa 195; Haley v. Chicago & N. W. Ry. Co., 21 Iowa 15; Kinyon v. Chicago & N. W. Ry. Co., 118 Iowa 349, 92 N.W. 40, 96 Am. St. Rep. 382; Zellmer v. Hines, 196 Iowa 428, 192 N.W. 281.

Direct and positive evidence in a death case that the decedent was not contributorily negligent is not required, but a jury may consider instincts naturally leading men to avoid danger as evidence of his due care. Hittle v. Jones, 217 Iowa 598, 250 N.W. 689.

The no-eyewitness rule is that, in the absence of eyewitnesses or of any obtainable direct evidence as to what the deceased did or failed to do by way of precaution at or immediately before the injury, there arises a presumption or inference that he,

prompted by natural instinct, was in the exercise of due care for his own safety. Edwards v. Perley, 223 Iowa 1119, 274 N.W. 910; Spooner v. Wisecup, 227 Iowa 768, 288 N.W. 894; Golinvaux v. Burlington, C. R. & N. R. Co., 125 Iowa 652, 101 N.W. 465; Carpenter v. Loetscher-Jaeger Mfg. Co., 178 Iowa 320, 157 N.W. 938; Sohl v. Chicago, R. I. & P. Ry. Co., 183 Iowa 616, 167 N.W. 529; Platter v. Minneapolis & St. L. R. Co., 162 Iowa 142, 143 N.W. 992; Wilson v. Chicago, M. & St. P. Ry. Co., 161 Iowa 191, 142 N.W. 54; Dalton v. Chicago, R. I. & P. Ry. Co., 104 Iowa 26, 73 N.W. 349; Gray v. Chicago, R. I. & P. R. Co., 143 Iowa 268, 121 N.W. 1097; Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N.W. 220; Azeltine v. Lutterman, 218 Iowa 675, 254 N.W. 854; Ellis v. Republic Oil Co., 133 Iowa 11, 110 N.W. 20; Low v. Ford Hopkins Co., 231 Iowa 251, 1 N.W.2d 95.

This court has also held on the issue of contributory negligence that evidence, physical facts, and surrounding circumstances are held to preclude presumption that one driving an automobile and killed in a collision with a railroad traffic signal in the center of the street used ordinary care. Van Gorden v. City of Fort Dodge, 216 Iowa 209, 245 N.W. 736; In re Estate of Hill, 202 Iowa 1038, 208 N.W. 334, 210 N.W. 241. In Oaks v. Chicago, R. I. & P. Ry. Co., 174 Iowa 648, 659, 156 N.W. 740, 744, speaking on the issue of contributory negligence and the absence of eyewitnesses, this court said: "There is a limitation to the rule [allowing the presumption of due care] that, where the physical facts show that care could not have been exercised the presumption does not obtain." On the same subject see Brown v. McAdoo, 195 Iowa 286, 188 N.W. 7; also Laudner v. James, 221 Iowa 863, 266 N.W. 15.

In the case of Platter v. Minneapolis & St. L. R. Co., supra, in discussing the question of contributory negligence of plaintiff's intestate and of the applicability of the no-eyewitness rule (no such witnesses being shown) the court stated that it was the rule of this court that the presumption of care arising from the instinct of self-preservation does not apply where there are eyewitnesses to the entire transaction, nor will it obtain if the physical facts and uncontradicted circumstances show that the

deceased could not have exercised the care required of him at the time of the accident.

The instruction given in the instant case was much like that of Platter v. Minneapolis & St. L. R. Co., 162 Iowa at pages 151, 152.

The Platter case, supra, makes reference to the case of Gray, admr. v. Chicago, R. I. & P. Ry. Co., 160 Iowa 1, 139 N.W. 934, in which case the applicability of the no-eyewitness rule and that as to the interval of time elapsing when the deceased was not seen immediately preceding the accident are discussed. There was one witness but she does not claim that she saw decedent constantly from the top of the hill towards the point of collision but says that there were three distinct intervals when deceased was not in sight. Under the record, this court held that the inference was permissible under the instruction.

In the case of Golinvaux v. Burlington, C. R. & N. R. Co., supra, the plaintiff's intestate was killed in driving upon a crossing in the face of an approaching train. The plaintiff relied upon a presumption of the instinct of self-preservation claiming that this entitled him to take the case to the jury. This court held that had there been no eyewitnesses doubtless this would have been true. Various witnesses had testified that they heard the approach of the train and vainly tried to warn plaintiff's intestate. This court held that under the facts as shown in the record the no-eyewitness rule did not apply.

In the case of Peterson v. Sheridan, 8 Cir., Iowa, 115 F.2d 121 (a death case in an automobile collision), it was claimed that there were no eyewitnesses to the collision. The plaintiff-appellant requested an instruction to the effect that as the record failed to show that there were eyewitnesses, within the contemplation of our holdings, the instinct of self-preservation would raise an inference that the deceased at the time of the collision was "exercising care for his own safety." The refusal of the trial court to give such instruction was held error. The opinion in the United States Circuit Court discusses various Iowa decisions wherein the no-eyewitness rule was involved. The case of Hittle v. Jones, 217 Iowa 598, 250 N.W. 689, is referred to. In the cited case (Peterson v. Sheridan) the defendant's (Sheri-

dan's) account of what he saw was limited to the moment of the impact and he could not and did not assume to testify to decedent's operation of his own car at that time, thereby holding that under the no-eyewitness rule Sheridan was not an eye-witness.

The Peterson v. Sheridan case, supra, was referred to along with a number of Iowa decisions wherein the no-eyewitness rule was involved in the case of Van Wie v. United States, April 1948, 77 F. Supp. 22. Federal District Judge Graven wrote the opinion and in it he refers to the Peterson-Sheridan case as reviewing various Iowa cases on such point. We quote from his opinion, page 41:

"The Iowa cases seem to make it clear that in order to be considered an eyewitness to a motor vehicle collision where one of the drivers is killed, the person testifying must at least have had the motor vehicle operated by the decedent under his observation at all material moments preceding and until the col-lision. What constitute material moments under the rule varies as to the conditions and circumstances in a particular case. One who observes a motor vehicle for the first time when it is only ten or fifteen feet away from the collision and moving rapidly is not an eyewitness during the material moments. Davidson v. Vast, supra. One whose observation of the movements of the decedent's vehicle is limited to the moment of impact is not an eyewitness under the Iowa rule. Peterson v. Sheridan, 8 Cir., 1940, 115 F.2d 121. One who does not observe a person until such person is immediately in front of a motor vehicle is not an eyewitness as to the actions of that person during the ma-terial moments of the accident. Hayes v. Stunkard, supra."

IV. With the above rules in mind, we will set out and dis-cuss pertinent parts of the evidence, incidents and surroundings as shown by the record. There is little dispute in much of the evidence.

The principal issue relates to the question of the con-tributory negligence of the deceased and of the applicability of the no-eyewitness rule. The trial court held that such rule ap-plied, and instructed the jury accordingly.

At the time of the accident Donald Koch was driving a Dodge car owned by his father, R. T. Koch, defendant herein. There were three youths living with their parents, all in the same neighborhood. The boys were Lyle Riedesel, age fifteen, Donald Koch, age seventeen, and Edward Henrichs, age sixteen. They were frequently together. About 7:30 p. m., April 7, 1949, the two last-named, with Donald driving his father's automobile, drove to the home of Lyle Riedesel and not finding him home returned to the gravel highway, which was about twenty-two feet wide, and fairly level. Without lights on the car, they proceeded towards the home of Henrichs and Koch. A few rods north of the Riedesel home they collided with a bicycle then being operated by Lyle, and his injuries were such that he died the following day.

After the collision Donald drove to the Riedesel home and said to Lyle's father: "I have run into Lyle up the road here." They went at once to the place. Riedesel, as a witness, said:

"I would say it was about 7:30. Fairly dark. It was after sunset. I next saw Lyle when he was lying in the road about three hundred feet north of the schoolhouse. I was sitting in a chair when Donald Koch came in and asked the Mrs. where I was. He came in the room and says, 'I have run into Lyle up the road here.' I told him to wait until I got a flashlight and we drove up there and Lyle lay in the middle of the road. * * * Lyle lay on his left side and stomach. I told Henrichs, let's turn him over, so Clark loosened his belt and I ripped his shirt open. * * * The Koch boy did not explain how this happened. He just told me he hit Lyle. I rode up to the accident with the Koch boy in his car and he had his lights on then. * * * The boy was lying sort of 'katti-cornered' in the road with his head pointing south and east and his feet northwest. I would say he was in the middle of the road. His bicycle was standing over along the east fence, upright about twenty-five feet from where Lyle lay. The bicycle as to direction from Lyle was a little north, almost directly east, just a little north. * * * We moved him over then at least three feet. * * * We turned him over on his back, and I turned him over on his right side. My judgment is that I moved him three feet to the east. He was a

wide-shouldered fellow. I moved him all of three feet, maybe more. * * * While the boy was lying there in the road, no cars passed on either side of him while I was there attending him. I previously stated he was lying with his head pointing southeast. I would say that from his head to the east side of the road and from his feet to the west side of the road there were eight or nine feet on either side of him. That would be to the edge of the gravel."

The driver, Donald Koch, and Edward Henrichs, his companion, testified that as they were driving northward they were traveling from twenty to thirty miles per hour and from two to three feet from the grass edge of the highway on the east side. Donald stated that while so traveling his car was without lights. He said: "Before the collision we saw Lyle Riedesel and then we hit him. He was about ten or twelve feet away when I first saw him. * * * He appeared to be on a bicycle. * * * There was no light [on the bicycle]." He further stated that the bicycle came in contact with the right front fender; that Lyle came on over and hit the windshield and post on the corner of the car and fell off and that he then turned to the left a little and stopped. Donald Koch said: "I saw Lyle and then I hit him. The collision happened in the flash of a second. I went straight into him from where I saw him. * * * If there had been a pedestrian walking down the road I couldn't have stopped even in two feet. I could not have seen him. * * * It was so dark I could see only twelve feet in front of the car; the windshield was clear except a little smoky part right in the middle; there was nothing to obstruct my view in the windshield." He further said that he went straight down the road about three feet from the shoulder and that as he went he did not change his course. He said: "I made no change in the course of my travel as I didn't have time to. We seen him just before we hit him but before I could do anything. I did not have a chance to turn my wheel either way. * * * After I struck Lyle I pulled over to the middle then. As soon as I seen him I started to turn and I just continued to turn. His body fell off to the east and I don't think I carried the body at all." Later Donald said: "If Lyle had been walking down the road that night and if he

were proceeding without lights, I wouldn't have seen him either if he didn't have no light."

After the collision, the record shows, the bicycle was moved and Donald Koch went to the Henrichs home and got the father of the Henrichs boy, returned to the scene of the accident with him and then went to the Riedesel home and brought Lyle's father to the place where Lyle was.

Edward Henrichs, the companion of Donald Koch in the car when Lyle Riedesel was struck, said that as they drove north up the road their speed was twenty to twenty-five miles per hour; that as they were proceeding north he was looking up the road and talking back and forth. "Q. Did you see Lyle Riedesel at any time before the accident? A. I just seen him, and then we collided. Q. How far do you think you saw him? A. About ten feet."

He says the right wheels of the car were from two and one-half to three feet from the grass; that when he saw Lyle Riedesel he was on a bicycle and he was coming down the east side of the highway about three feet from the east side or grass line and there was no light on the bicycle or about the person of Lyle Riedesel. He states that Donald Koch came to get him (the witness) and go down to Lyle Riedesel's to get him; that they went but did not find him and started back up the road without lights. We quote from his cross-examination:

"Q. Without lights you couldn't see anybody walking or traveling on the highway? A. We could see the road. Q. How far could you see the road ahead? A. Not very far because when Lyle popped up right in front of us we didn't see him. Q. That is a fact, that Lyle popped up right in front of you before you saw him, isn't that true? A. I saw him about ten feet in front of us. I saw him and then we collided. I didn't say anything to the driver as we didn't have time. We just saw him and then we collided. We saw him about ten feet in front of us and then we collided. Koch didn't have time to change the course of his car after Lyle appeared. He turned out in the center of the road after we collided. He did not have a chance to move his car over at all, and he did not. We didn't carry Lyle after the collision, he bounced off to the right or east side. We were keeping

from two to three feet from the grass line of the road. We didn't get over on the west side of the road at any time until after we collided. We didn't swerve the car in the gravel. I don't know whether we were within two or three feet all the way up but that is where we were when it happened. * * * Q. How far ahead could you see the road? A. Not very far, because it just happened that quick. Q. You couldn't see more than ten feet, is that right? A. Maybe could have if I had been looking, if I had known there was going to be something there. Q. Weren't you looking? A. Yes, we were watching the road. You could see about ten feet. That is the reason we didn't see Lyle any quicker. We could not see more than ten feet in front of the automobile when we were looking. Lyle flew up against the windshield and bounced off the east side. The bicycle flew over to the east too. It flew north and east about twelve feet north of the body. I don't know whether the bicycle went into the air. I don't know how far. In my judgment it would be a couple or three feet. I mean from the ground. Q. This accident, the way you describe it, happened so quickly that you couldn't see whether Lyle had been over on the other side of the road and came over, or where he was before the impact, is that correct? A. No. Q. You couldn't tell where he was up until when you saw him in that split second and you hit him, is that right? A. Yes, that's right. Q. You don't know what Lyle was doing previous to the time you hit him? A. No."

Various photographs of the road, automobile and the bicycle were in evidence. The road was straight and almost level. The bicycle was mashed and twisted in its front. The right (east) side of the bumper and fender of the automobile was bent in and the right side of the windshield was more or less broken and shattered. Donald Koch and Edward Henrichs testified that Lyle when first seen was directly in front, and in a flash there was a collision.

V. Howard Ryerson, an attorney, was called to act as coroner by the sheriff of Greene County, following the accident in which Lyle Riedesel lost his life. He held an inquest. Donald Koch was a witness. Ryerson was asked as to any statement which Donald Koch made at the inquest as to whether he did

or did not see Lyle. He answered, "* * * as I recall Donald stated that Lyle Riedesel and the bicycle were practically upon him before he saw him, or something to that effect. * * * As I recall at the inquest the only thing Donald said as to seeing Lyle was that he was practically upon him when Don saw him. He did not put it in feet at all that I recall."

▉ VI. In instruction No. 18 the court dealt with the question of contributory negligence on the part of Lyle Riedesel (failure to have a light on his bicycle) and therein the court told the jury that whether or not there were eyewitnesses to the collision was a question of fact for their determination. The instruction further stated that if the jury found that there were no such eyewitnesses, then they would have a right to consider an inference that Lyle Riedesel was exercising ordinary care for his safety at such time, by reason of instincts of self-preservation and love of life. The instruction further told the jury that such inference was not indulged in where there was direct and credible evidence as to the time of the accident but was only to be considered in connection with other circumstances shown in evidence. We set out the concluding paragraphs of such instruction:

"A violation of this provision of the law constitutes negligence. It is for you to determine as to whether or not Lyle Riedesel, at the time of the accident, had his bicycle equipped as required. If you find that Lyle Riedesel's bicycle was not equipped as required by our law, you should then determine whether or not such failure contributed in any manner or any degree to cause the accident in question.

"If there was negligence on the part of Lyle Riedesel and such negligence contributed in any manner or any degree to the accident in question, then the plaintiff may not recover in this action."

The instruction given is substantially similar and embodies the same thought as those given and approved in the case of Platter v. Minneapolis & St. L. R. Co., supra, and, in our opinion, was proper under the record in this case. Under it we think that the jury could properly find that under the rules above set forth

neither Donald Koch nor his companion, Edward Henrichs, was an eyewitness to the accident and that the inference above referred to and the attending facts and circumstances appearing could be properly considered in their determination of the question of the contributory negligence of Lyle Riedesel.

VII. In his brief plaintiff argues that there is no evidence that at the time of the accident Lyle Riedesel was operating his bicycle. This argument has no force in the face of the record. Plaintiff in his pleading in several instances states that at and just prior to the accident Lyle Riedesel "was proceeding along said highway on his bicycle." This statement was repeated in at least four or five paragraphs of his petition.

Donald Koch and Edward Henrichs state that when they first saw Lyle Riedesel he was on his bicycle or appeared to be on it. The court in stating the issues told the jury that at the time of the accident Lyle Riedesel "was riding his bicycle." The same thought is embodied in the interrogatories given the jury.

VIII. Both Donald Koch and Edward Henrichs as witnesses testified that at the time of the collision the Koch automobile was traveling at a speed of from twenty to twenty-five miles per hour and that at such time its east (right) wheel was from two to three feet from the grass east of the gravel. Henrichs states that he does not know that was the distance all the way up but was positive that it was at the collision. As the Koch car was driven to the Henrichs and Riedesel homes just after the accident, there was no positive evidence of where it was just after the collision. The evidence is not in harmony where Lyle was found right after the collision—some witnesses saying he was in the middle of the road, others that he was close to the east side. This was a matter for the jury to pass upon. In Davidson v. Vast, 233 Iowa 534, 538, 10 N.W.2d 12, 15, we said: "The jury was not bound to accept defendant's version as a verity." In Hawkins v. Burton, 225 Iowa 707, 713, 281 N.W. 342, 345, we said: "The jury was not bound to take the testimony of the defendant Burton as an absolute verity. It was warranted in considering not only the verbal testimony but all the facts and circumstances surrounding the accident." In that case the court quoted from 10 Blashfield Cyclopedia of Automobile Law and Practice, section 6560:

"Although the evidence may be entirely circumstantial as to the rate of speed at which an automobile was operated, it may be sufficient to support a reasonable conclusion reached by the jury on the issue of negligence. Circumstances connected with an accident may be sufficient to overcome direct evidence as to the speed of a motor vehicle."

See also Fraser v. Brannigan, 228 Iowa 572, 293 N.W. 50.

IX. We have heretofore referred to and set out two special interrogatories given the jury and their answers thereto. The answer to the first was to the effect that at the time of the accident Lyle Riedesel was operating his bicycle without a lamp on the front exhibiting a white light visible for three hundred feet and at a time more than one-half hour after sunset. The answer thus given was determinative of the claim of defendant that at and before the time of the collision the deceased was negligent, in that his bicycle was being operated upon the highway without a light as provided by section 321.397, Code of 1946. Such failure upon the part of the operator would be negligence. However, it does not necessarily follow that one violating a statute cannot recover unless it should appear that such negligence contributed in some manner or degree to the accident in question. Fischer v. Hawkeye Stages, 240 Iowa 1203, 37 N.W.2d 284. The cited case dealt with a claimed inconsistency between the answer to an interrogatory and a general verdict.

The jury in answering interrogatory No. 2 specifically answered that the failure of Lyle Riedesel to have the lighted lamp on his bicycle at and prior to the collision did not contribute to the accident.

In instruction No. 18 the court instructed the jury upon such point and told them that should they find that the deceased had failed to observe the statutory requirement as to having a light upon his bicycle at or just prior to the accident, then they should determine whether or not such failure contributed in any manner or any degree to cause the accident in question.

In this connection we think the answer to the second interrogatory must be considered in connection with the instruction above-quoted and the general verdict. That interrogatory (No. 2) has heretofore been set forth. In short, it asked the jury to

state whether at the time of and immediately before the collision Lyle Riedesel was operating his bicycle without the statutory light, and had contributed to the accident. Their negative answer amounted to a finding of fact. In arriving at such finding they could conclude that at and just prior to the collision Lyle Riedesel was traveling on his right side of the highway, as required in meeting traffic (section 321.298).

The two answers do not, in our opinion, conflict; both are to be considered together in the light of the record and all surrounding and attending circumstances shown.

It seems to us that the instruction was correct and a proper statement of the law to be applied to the record facts.

It is our conclusion that the trial court properly held that the no-eyewitness rule was applicable in the case and that it was proper to be considered in the consideration of the question as to whether or not the negligence of Lyle Riedesel contributed to his injury and death.

This holding is determinative in this case. We do not find it necessary to give consideration to any other matters therein. The court did not err in refusing to set aside the verdict and grant a new trial, or to render judgment notwithstanding the verdict. The case is affirmed.—Affirmed.

GARFIELD, C. J., and MULRONEY, SMITH, WENNERSTRUM, and HAYS, JJ., concur.

OLIVER and BLISS, JJ., concur in result.